# The County of Whiteside, Illinois, Appellant, v. The County of Lee, Illinois, Appellee.

## Gen. No. 7,716.

Opinion filed May 24, 1928. Rehearing denied October 12, 1928.

ROBERT W. BESSE, for appellant.

MARK C. KELLER, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.

This is a suit instituted by Whiteside County, appellant, against Lee County, appellee, to recover from Lee County a proportionate share of the money laid out and expended by the appellant in repairing and painting the Howland Creek Bridge which constitutes a part of a public highway alleged to be within 80 rods of the county line which divides the counties of appellant and appellee. The declaration consists of one count and is as follows:

"First Amended Declaration sets forth that the Howland Creek Bridge was located in Whiteside County and that it was necessary to repair the bridge by painting the steel, removing the old plank floor, furnishing and installing a new three-inch creosoted pine floor, with an asphalt paint coat wearing surface; that Lee County was properly notified of the necessity

of such repairs and requested to pay its proportionate share of the expenses; that Lee County refused to pay its proportionate share; that Howland Creek Bridge is on a road used as a public highway within eighty (80) rods of the County line in Whiteside County that divides the political subdivision of the County of Whiteside from the County of Lee; that the statutory laws of the State of Illinois as set forth in Chapter 121, Paragraph 41, of the Smith-Hurd Illinois Revised Statute, states that the bridges and culverts on roads on county lines and on roads within eighty (80) rods of county lines shall be built and repaired by such Counties, and the expenses of such construction and repair shall be borne in proportion to the assessed value of the property, real and personal, in the respective counties according to the latest preceding equalized assessment thereof prior to such construction or repairs; that the construction and repairs on the Bridge were reasonable in kind and cost; that Lee County refused to make the repairs or pay its proportionate share of the expense of construction and repairs; that the total cost of making the repairs was Eight Hundred Sixty-seven and 50–100 Dollars ($867.50); that forty-nine (49) per cent should be paid by Whiteside County and fifty-one (51) per cent should be paid by Lee County; that Whiteside County repaired said bridge and paid for the same; that a statement of expenses was submitted to the County of Lee and request made for payment; that the County of Lee failed and refused to pay its proportionate share of such expenses and still does refuse, therefore it brings its suit."

To the declaration the appellee pleaded the general issue. The trial was had by the court without the intervention of a jury, and a finding had in favor of appellee and this appeal followed.

It appears from the record that Whiteside County and Lee County adjoin, Whiteside County being west

of Lee County. There is a public highway, a portion of which is wholly within Whiteside County, in which portion of the highway there is a bridge known as the Howland Creek Bridge. It became in need of repairs. Lee County was notified of the necessity of such repairs and requested to pay a proportionate share of the expense. Lee County refused to pay a proportionate share. The repairs were made at an expense of $867.50, and in view of the taxable property in each of the counties, it is the contention of Whiteside County that it should pay only 49 per cent of the cost of said repairs and that 51 per cent should be paid by Lee County. The record further discloses that after Whiteside County had repaired said bridge and paid for the same a statement of the expenses was submitted to Lee County and a request made for payment; that the said County of Lee refused and failed to pay any portion of the expense and the result was the institution of this proceeding.

The result of this suit depends upon the construction to be placed on Cahill's St. ch. 121, ¶ 41, paragraph 41, chapter 121, Smith-Hurd Statutes, which reads as follows:

"Bridges or culverts on roads on county lines, and bridges or culverts on roads within eighty rods of county lines shall be built and repaired by such counties and the expense of such construction and repair shall be borne in proportion to the assessed value of the property, real and personal, in the respective counties according to the last preceding equalized assessment thereof prior to such construction or repair.

"And when any county desires to construct or repair any such bridge or culvert and has appropriated its share of the cost of constructing or repairing the same, it shall be the duty of such other county to make an appropriation for its proportionate share of the expense of such construction or repair. And if the other county fails or refuses to make such appropria-

tion, any court of competent jurisdiction, upon a petition for that purpose, shall issue an order to compel such other county to make such appropriation; or the county which has made its appropriation, may, after giving due notice to the other county, proceed with the construction or repair of the bridge or culvert, and, if the construction or repair is reasonable in kind and costs, recover from the other county by suit, such proportionate share of the expense as the other county is liable for, with costs of the suit and interest from the time of the completion of the construction or repair; but, if the expense of the construction or repair of the bridge or culvert is unreasonable then the county may recover only the other county's proportionate share of an amount equal to a reasonable expense for the construction or repair.''

It is not claimed that the road in question is entirely within 80 rods of the county line between the counties of Whiteside and Lee. The road is of the width of 60 feet. The bridge is located west of the center of the road. This fact is not disputed. The record discloses that a point 80 rods due west from the county line dividing the two counties will not include any part of the bridge, but will include about twelve and a half feet of the road. In other words, there is but a part of the public highway or road on which said bridge is maintained that comes within the 80-rods limitation.

It is the contention of the appellant that when the legislature used the words ''on a road within 80 rods of a county line,'' it meant that if any portion of the road was within 80 rods that a bridge built on that road should be built at the expense of both counties proportionately; that the purpose of the legislation was to fix a liability on adjoining counties where, in all probability, such county derived a proportionate benefit from the use of the bridge, and to say that the entire road must be within the 80-rods point before it could come within the meaning of the statute, would, in effect, do

away with the intent of the legislature in the passage of the act.

It is contended by appellee that it was the intent of the legislature, when enacting said statute, that it should be restrictive in its application to bridges on roads on county lines and bridges on roads leading from one county to another, and within said prescribed limit of 80 rods from the county line dividing such counties, and that the duty to repair such bridges would be, in such cases, but a correlative of the beneficial use of said bridges by the public, the inhabitants of said counties, which in this proceeding would be the inhabitants of Whiteside and Lee Counties, and the repairs and upkeep of same properly chargeable, under the statute, to both counties. However, the Howland Creek Bridge and the road on which it is located, in the instant case, it is insisted by appellee, does not fall within this class of bridges and roads, and, therefore, the court did not err in so finding.

The only question is whether or not under a proper interpretation of the statute, Lee County can be compelled to pay a portion of the cost of repairing the bridge when the entire roadway is not within 80 rods of its boundary and no part of the bridge is within 80 rods of the county line. In controversies involving the construction of this statute, the distance to be computed is the distance between two designated points— i. e., a point on the county line and the bridge. (*County of Stark v. County of Henry*, 326 Ill. 535–539.) In *County of Stark v. County of Henry, supra,* in construing the section of the statute involved in this proceeding, the court among other things at page 539 said: "That this construction is the one intended by the legislature at the time it passed the original act containing the words in question is evidenced by the fact that the former statute on this question was by its express terms limited to bridges 'over streets or roads extending from one county or town into another

county or town and crossing county or town lines.' When the legislature struck out the words quoted this limitation was removed, and the act then applied to a bridge within 80 rods of the county or town line whether the highway on which it was, crossed a county or town line or not."

The record discloses that the bridge in question is not within 80 rods of the county line. Since the bridge is not within 80 rods of the county line, in view of the construction placed upon the statute, we conclude that the judgment of the circuit court of Lee County should be affirmed, which is accordingly done.

*Judgment affirmed.*