STEWART IN-FRA-RED COMMISSARY OF WILMINGTON, INC.,
Plaintiff,

*vs.*

IRA F. CONNER,
Defendant.

*New Castle, November 18, 1964.*

*Stephen Hamilton, Jr.,* and *Frank O'Donnell* of Hamilton & O'Donnell, Wilmington, for plaintiff.

*John A. Rich* of Errigo, Biondi & Porter, Wilmington, for defendant.

SEITZ, Chancellor: Plaintiff corporation seeks an injunction preventing defendant from violating an agreement not to compete. The defendant is a former employee. This is the decision after final hearing.

Since 1957 plaintiff has had an exclusive franchise to operate a so-called commissary in Delaware and certain counties in Maryland and New Jersey. Plaintiff's business consists of placing In-fra-red cookeries in business establishments and then selling such businesses various kinds of sandwiches which they resell to the public after cooking them in the cookeries.

The defendant was first employed by plaintiff in 1957 or 1958 to serve as a route salesman. At that time he executed an agreement not to compete for one year. In May 1958 he was laid off. He was rehired in September 1960, at which time he signed a new agreement not to compete for one year. This employment terminated in July 1961. About July 9, 1962 the defendant was again employed by plaintiff at

the solicitation of plaintiff. At that time defendant signed a W-2 tax form and also executed an agreement not to compete which is the subject matter of the present action. By its terms defendant agreed that for a "period of twelve (12) months immediately following the termination of his employment" he would not compete in the area covered by plaintiff's franchise. The recited consideration for the execution of the agreement is the employment of defendant by plaintiff. No employment contract other than an employment at will was involved.

When plaintiff employed defendant in 1962, it knew that defendant could not drive because the suspension of his driver's license had not been lifted. The plaintiff's president knew that the period of suspension had expired but was also aware that defendant could not regain his license until he met certain requirements concerning insurance, etc. At that time plaintiff was in great need of obtaining defendant's services because of a personnel shortage. Thus, defendant was employed with a realization that he would have to be driven on his rounds. However, it was presumably hoped that he would soon receive his license and be able to drive himself. Defendant worked two days the week of July 9 and two days the week of July 16. On these occasions he was supplied with a driver. It is undisputed that he then ceased to perform services for or receive compensation from plaintiff. The employment record maintained by plaintiff for 1962 recites as follows: "DATE LEFT 7/24". After July 24, plaintiff obtained another person to man the route previously serviced by defendant.

About September 1, 1962, the defendant's license to drive was reinstated. In the interval defendant was unemployed, though he apparently sought employment. Shortly after his license was restored defendant started to perform his erstwhile usual services for plaintiff. Circumstances surrounding this event will be discussed later. Defendant worked until February 1964 when he was discharged. Defendant immediately entered into a competing business and it is this activity which plaintiff seeks to have enjoined.

Defendant contends that the 1962 agreement not to compete expired one year after he ceased to work for plaintiff in July 1962. Since he admittedly did not sign a new agreement when he returned

to work in September of 1962, he says there was no agreement not to compete in effect in February 1964 when he entered his present business. Plaintiff's position is that it employed defendant in July of 1962; that it was their initial understanding that defendant would be employed as usual as soon as he obtained his license; that he did commence work later pursuant to this arrangement and thus there was no termination of his employment in the interim. Strangely enough, counsel have been unable to find any cases dealing with a "termination of employment" provision in the context of an agreement not to compete.

The issue is whether, for purposes of the 1962 agreement, defendant's employment was terminated when defendant ceased performing work for plaintiff in July 1962. If it so terminated, then concededly plaintiff has no cause for complaint. If it did not, then plaintiff is entitled to appropriate injunctive relief. The court is thus required to make a factual finding as to the objective intent of the parties.

These are my conclusions based on my factual findings and inferences therefrom. Plaintiff employed defendant in July 1962 out of a sense of urgency and with a full awareness that defendant would not then be able to drive. However, plaintiff hoped that defendant would soon obtain his license. After two weeks defendant still needed to be chauffered and this was not an economically feasible arrangement. Defendant ceased to work and the parties are in dispute as to whether defendant was told that he "had" the job when he got his license. In any event, a person was obtained to take defendant's place. As noted, defendant did not perform services for or receive compensation from plaintiff for the period from about July 24, 1962 to early September 1962. This is evidence tending to show the lack of an employer-employee relationship. However, the absence of such facts does not necessarily prove that there was no such relationship. Such a situation exists in cases of payless vacations, etc. Compare *Peters v. Aetna Life Ins. Co.,* 279 *Mich.* 663, 273 *N.W.* 307. Thus, an evaluation of all the circumstances is required to resolve this case.

Plaintiff testified that when defendant left in July he was told to get his license and come back to work. He further testified that

defendant's replacement was temporary and would be laid off when defendant obtained his license and returned. Defendant denies that he was told that the job was his when he obtained his license. He testified further that he was employed in September because his replacement was not satisfactory. I find that defendant had no reason to expect on the basis of any continuing arrangement that when he came back in September the position was being held for him. I further find that he was rehired in September when he obtained his license because plaintiff had become dissatisfied with his replacement.

Plaintiff relies on the fact that defendant signed earlier agreements when reemployed but was not requested to do so when he returned in September 1962 as evidence of the plaintiff's belief that no "new" employment was involved. It adopts the same reasoning with respect to the fact that the execution of a new W-2 form was not required. While this evidence does lend some support to plaintiff's contention, I think the answer is that it is also consistent with an oversight on plaintiff's part. In any event, I consider the evidence to be sufficiently ambiguous in the context of the present issue that the doubt should not be factually resolved in plaintiff's favor.

Plaintiff also points to a finding by the Employment Security Commission that the defendant's employment with plaintiff "was for approximately eighteen months until February 14, 1964". Plaintiff says this finding is inconsistent with any break in employment in July-September 1962. The court cannot follow this contention, assuming that the finding is entitled to consideration here. I say this because going back eighteen months from February 14, 1964 brings one to August 14, 1962. Defendant admittedly did not perform any services in August 1962. Thus, there was a break if we go back exactly eighteen months from February 14, 1964. But the Commission's finding uses the word "approximately". Thus, the period could by a slight shift be made to apply either to the July or the September date. Thus, the indefiniteness of this evidence renders it of no value to plaintiff here.

I conclude that defendant was employed under a contract at will in early July 1962 and that he left at the wish of the plaintiff

later that month because he had not obtained his license. I further conclude that defendant's leaving was not pursuant to any understanding that the job was his when he obtained his license.

Thus, for purposes of the 1962 agreement not to compete, I find that defendant's employment terminated when he left in July 1962. My conclusion is based on my evaluation of the evidence in the light of the legal principles governing the enforcement of agreements of this type. Plaintiff's request for injunctive relief will be denied.

Present order on notice.